UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

AMANDA HATHERLEY,
individually, and as personal
representative of the estate
of B.H.L.,

NO. CIV. 2:13-00719 WBS CKD

MEMORANDUM AND ORDER RE:
MOTIONS TO REMAND AND STAY

          Plaintiffs,

     v.

PFIZER, INC., a Delaware
Corporation; PFIZER
INTERNATIONAL LLC, a New York
Limited Liability Corporation;
MCKESSON CORPORATION,
individually and d/b/a
NORTHSTAR RX LLC, a Delaware
Corporation; WYETH
PHARMACEUTICALS, INC. and DOES
1 through 100, inclusive,

          Defendants.

_____/

----oo0oo----

          Plaintiff Amanda Hatherley, individually and as

personal representative of the estate of B.H.L., brings this

wrongful death products liability action against defendants

Pfizer, Inc.; Pfizer International LLC (together, "Pfizer");

1

McKesson Corporation, individually and doing business as

Northstar RX LLC ("McKesson"); Wyeth Pharmaceuticals, Inc.

("Wyeth"); and Does one through one hundred.

Plaintiffs allege that B.H.L. died as a result of

serious birth defects caused by Hatherley ingesting Effexor, a

brand-name prescription drug, during her pregnancy. (Notice of

Removal Ex. A ("Compl.") ¶¶ 1, 31 (Docket No. 1-1).)  Pfizer

allegedly manufactures Effexor, and McKesson allegedly

distributed the Effexor that was dispensed to Hatherley. (Id. ¶¶

9, 11-12.)  The crux of plaintiffs' allegations is that

defendants failed to adequately warn Hatherley, her physicians,

and her health care providers of the true risks of using Effexor

while pregnant. (Id. ¶¶ 58-61.)

Hatherley is a resident of Shasta County, California.

(Id. ¶ 2.)  McKesson is a Delaware corporation with its principal

place of business in San Francisco, California. (Id. ¶ 1; Notice

of Removal ¶¶ 7-10 (Docket No. 1).)

Plaintiffs filed this action in the Superior Court of

Shasta County, California on March 8, 2013. (Notice of Removal ¶

1.)  They bring claims for: (1) strict liability for failure to

warn; (2) negligence; (3) breach of implied warranty; (4) breach

of express warranty; (5) deceit by concealment in violation of

California Civil Code sections 1709, 1710; (6) negligent

misrepresentation; (7) fraud and fraudulent concealment; (8)

survival; and (9) wrongful death.

Pfizer and Wyeth ("defendants") removed the action to

this court on April 12, 2013. (Docket No. 1.)  Plaintiffs now

move to remand this action, (Docket No. 11), while defendants

move to stay pending resolution of a motion before the Judicial
Panel on Multidistrict Litigation seeking establishment of a
multidistrict litigation for federal cases alleging birth defects
due to Effexor, (Docket No. 10).

I.  Legal Standard

        The Ninth Circuit requires district courts "to strictly
construe the removal statute against removal jurisdiction" and
reject federal jurisdiction "if there is any doubt as to the
right of removal in the first instance." Gaus v. Miles, Inc.,
980 F.2d 564, 566 (9th Cir. 1992).  "The 'strong presumption'
against removal jurisdiction means that the defendant always has
the burden of establishing that removal is proper." Id.  "If at
any time before final judgment it appears that the district court
lacks subject matter jurisdiction, the case shall be remanded."
28 U.S.C. § 1447(c); Gibson v. Chrysler Corp., 261 F.3d 927, 932
(9th Cir. 2001).

II.  Analysis

        Jurisdiction in this case is based on diversity of
citizenship.  Such jurisdiction requires complete diversity.  See
Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806).  Both plaintiff
Hatherley and defendant McKesson are citizens of California for
purposes of determining diversity jurisdiction.  See 28 U.S.C. §
1332(c).  Where a non-diverse defendant is fraudulently joined,
however, the presence of that defendant will not defeat diversity
jurisdiction.  Morris v. Princess Cruises, Inc., 236 F.3d 1061,
1067 (9th Cir. 2001).

        In their Notice of Removal, defendants argued that
McKesson should be disregarded for purposes of establishing the

3

1  court's jurisdiction over this action because it is fraudulently

2  joined.  (Notice of Removal ¶ 13.)  Thus, to determine whether

3  the court has subject matter jurisdiction over this action, it

4  must determine whether McKesson is a sham defendant.

5       "Fraudulent joinder is a term of art."  McCabe v. Gen.

6  Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).  Joinder of a

7  non-diverse defendant is fraudulent where "the plaintiff fails to

8  state a cause of action against a resident defendant, and the

9  failure is obvious according to the settled rules of the state .

10  . . ."  Id.; Hunter v. Philip Morris USA, 582 F.3d 1039, 1043

11  (9th Cir. 2009); see Mireles v. Wells Fargo Bank, N.A., 845 F.

12  Supp. 2d 1034, 1063 (C.D. Cal. 2012) ("In the Ninth Circuit, a

13  non-diverse defendant is deemed to be fraudulently joined if,

14  after all disputed questions of fact and all ambiguities in the

15  controlling state law are resolved in the plaintiff's favor, the

16  plaintiff could not possibly recover against the party whose

17  joinder is questioned." (internal quotation marks and citations

18  omitted)).  Defendant carries the burden of proving fraudulent

19  joinder and it is heavy, as "[f]raudulent joinder must be proven

20  by clear and convincing evidence."  Hamilton Materials, Inc. v.

21  Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007).  "If there

22  is a non-fanciful possibility that plaintiff can state a claim

23  under California law against the non-diverse defendants the court

24  must remand."  Macey v. Allstate Prop. & Cas. Ins. Co., 220 F.

25  Supp. 2d 1116, 1117 (N.D. Cal. 2002).

26       In their Notice of Removal, defendants contend that

27  "[p]laintiffs' claims against McKesson fail both as a matter of

28  law and under the allegations of the Complaint."  (Notice of

4

1   Removal ¶ 13.)  Most of defendants' arguments are now old hat,

2   however, as versions of them have been rejected by numerous

3   district courts in cases involving the same purportedly

4   fraudulent defendant--McKesson.  This court again addresses these

5   arguments, but notes that other district courts in California

6   have already remanded three cases related to this action.[1]  See

7   Taha v. Pfizer, Inc., CV 13-02577-MWF (FFMx), slip op. (C.D. Cal.

8   July 1, 2013); I.L. v. Pfizer, Inc., 2:13-cv-02578-RGK-PJW, slip

9   op. (C.D. Cal. June 6, 2013); A.S. v. Pfizer, Inc.,

10  1:13-CV-00524-LJO, 2013 WL 2384320 (E.D. Cal. May 30, 2013)

11  (Thurston, M.J.).

12      A.   Distributor Liability for Failure to Warn

13          To show that McKesson is not a fraudulent defendant and

14  secure a remand, plaintiffs need to state only one viable claim

15  against McKesson.  Plaintiffs contend that their strict liability

16  failure-to-warn claim against McKesson is not foreclosed under

17  California law.  (Brief in Supp. 5:7-7:7 (Docket No. 11).)

18          The California Supreme Court has held that

19  manufacturers of prescription drugs can be held strictly liable

20  for failure to warn of knowable risks.  Brown v. Superior Court,

21  44 Cal. 3d 1049, 1069 (1988).  In contrast, California courts

22  have not expressly addressed the potential liability of

23  distributors and other parties in the chain of distribution in

24  prescription drug cases.  See Mendez v. AstraZeneca

25  Pharmaceuticals LP, 1:12-CV-00535-LJO, 2012 WL 1911382, at *2

26  _____

27          [1]   Pfizer filed a motion for leave to file a sur-reply.
    (Docket No. 27.)  The court denies the motion because the court
    has reviewed the sur-reply and found nothing in it that would
28  alter this order.

1   (E.D. Cal. May 25, 2012) (citing <u>Hamzey v. Bayer Corp.</u>, 10CV0526
2   JM CAB, 2010 WL 2011529, at *4 (S.D. Cal. May 19, 2010), for the
3   proposition that there is no well-established law in California
4   that creates an exception in strict liability for distributors of
5   prescription drugs).  Under California law, however, the general
6   rule is that "[i]n a product liability action, every supplier in
7   the stream of commerce or chain of distribution, from
8   manufacturer to retailer, is potentially liable." <u>Edwards v.</u>
9   <u>A.L. Lease & Co.</u>, 46 Cal. App. 4th 1029, 1033 (1st Dist. 1996);
10  <u>see</u> <u>O'Neil v. Crane Co.</u>, 53 Cal. 4th 335, 342 (2012) ("California
11  law has long provided that manufacturers, distributors, and
12  retailers have a duty to ensure the safety of their products, and
13  will be held strictly liable for injuries caused by a defect in
14  their products."); <u>Bostick v. Flex Equip. Co., Inc.</u>, 147 Cal.
15  App. 4th 80, 88 (2007) ("The doctrine of strict products
16  liability imposes strict liability in tort on all of the
17  participants in the chain of distribution of a defective
18  product.").

19        In view of this case law, it appears as though a strict
20  liability failure-to-warn claim against a pharmaceutical drug
21  distributor remains viable.  <u>See</u> <u>Moorhouse v. Bayer Healthcare</u>
22  <u>Pharmaceuticals, Inc.</u>, 08-01831 SBA, 2008 WL 2477389, at *5 (N.D.
23  Cal. June 18, 2008) ("In light of the general rule under
24  California law that distributors of defective products are
25  strictly liable, the lack of any authority exempting distributors
26  from liability for failure to warn in the prescription drug
27  context inclines this Court against a finding of frivolity."
28  (internal citation omitted)).  Defendants, however, raise two

arguments as to why McKesson cannot be liable for a failure-to-warn claim.

      1.   <u>Comment K</u>

      Comment k of the Restatement (Second) of Torts § 402A sets forth a test that "would impose liability on a drug manufacturer only if it failed to warn of a defect of which it either knew or should have known."[2]  <u>Brown</u>, 44 Cal. 3d at 1059. Defendants cite a lone unpublished case, <u>Skinner v. Warner-Lambert Co.</u>, CV 03-1643-R(RZX), 2003 WL 25598915 (C.D. Cal. Apr. 28, 2003), for the proposition that pursuant to comment k, a non-manufacturer supplier cannot be held liable under a products liability theory.  <u>Skinner</u>, which also involved a claim that the distributor defendant was a sham defendant, devoted the following

---

[2]   Comment K of the Restatement (Second) of Torts Section 402A provides:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use.  These are especially common in the field of drugs. . . .  Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous.  The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician.  It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk.  The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Restatement (Second) of Torts § 402A (1965).

analysis to the issue: "Pursuant to comment k of the Restatement (Second) of Torts Section 402A and California law following comment k, a distributor of a prescription drug is not subject to strict liability." <u>Skinner</u>, 2003 WL 25598915, at *1.  As explained by another court in the Central District of California that declined to follow <u>Skinner</u>, however, comment k "does not exempt distributors from strict liability.  Rather, comment k states that a seller of pharmaceuticals is not strictly liable if the products are properly prepared and marketed, and proper warning is given."[3]  <u>Black v. Merck & Co., Inc.</u>, CV 03-8730 NMAJWX, 2004 WL 5392660, at *4 (C.D. Cal. Mar. 3, 2004). Accordingly, because plaintiffs allege here that proper warning was <u>not</u> given, comment k does not preclude strict liability for McKesson.

2.   Learned Intermediary Doctrine

Under California law, the learned intermediary doctrine provides that manufacturers do not have a duty to warn the ultimate consumers of a drug's potential dangers if adequate warning has been given to physicians (i.e., the "intermediaries"). <u>Carlin v. Superior Court</u>, 13 Cal. 4th 1104, 1116 (1996) ("[I]in the case of prescription drugs, the duty to warn runs to the physician, not to the patient." ); see <u>Martin v. Merck & Co., Inc.</u>, S-05-750 LKK/PAN, 2005 WL 1984483, at *4 (E.D. Cal. Aug. 15, 2005) (noting that the learned intermediary doctrine is a defense to a cognizable cause of action).

_____

[3]   A "seller" of a product is "any person engaged in the business of selling products for use or consumption.  It therefore applies to any . . . wholesale or retail dealer or distributor[.]" Restatement (Second) Torts § 402A, cmt. f.

Defendants argue that the doctrine precludes the court from
finding that McKesson had any duty to warn consumers directly and
thus precludes plaintiffs from establishing the element of
causation.  (Opp'n at 8:8-20, 9:1-18 (Docket No. 17).)
Defendants' reliance on the learned intermediary doctrine is
misplaced for two reasons.

       First, the learned intermediary doctrine "applies only
if a manufacturer provided <u>adequate</u> warnings to the
intermediary."  <u>Hill v. Novartis Pharmaceuticals Corp.</u>, --- F.
Supp. 2d ----, 2013 WL 1953753, at *6 (E.D.N.Y. May 10, 2013)
(quoting <u>Stewart v. Union Carbide Corp.</u>, 190 Cal. App. 4th 23, 29
(2d Dist. 2010)) (emphasis added).  So "where a manufacturer
provides inadequate warnings, or no warning at all, it '[cannot]
rely upon the intermediary, even if [learned], to pass on or give
warnings.'"  <u>Id.</u> (quoting <u>Stewart</u>, 190 Cal. App. 4th at 29).
Plaintiffs allege that defendants knew the risks to women who
ingested Effexor while pregnant.  (Compl. ¶ 58.)  They further
allege that "[d]efendants failed to adequately inform physicians
and misled physicians about the risks associated with Effexor . .
. ."  (<u>Id.</u> ¶ 58; <u>see</u> <u>id.</u> ¶¶ 27-28, 59-61.)  Thus, the learned
intermediary doctrine appears to be inapplicable here.[4]  <u>See</u>

_____

       [4]   Defendants have provided no authority for the
proposition that the learned intermediary doctrine applies
regardless of the adequacy of the warnings.  Further, the court
has found no district court to have considered the argument to
approve it.  <u>See, e.g.</u>, <u>In re Avandia Mktg., Sales Practices &</u>
<u>Products Liab. Litig.</u>, 624 F. Supp. 2d 396, 419-20 (E.D. Pa.
2009) ("[There are] rulings of multiple federal district courts
considering California law that the learned intermediary defense
simply does not apply where a plaintiff alleges 'that the
manufacturer failed to adequately warn doctors of the danger of
the drug' . . . ." (quoting <u>In re Fosamax Products Liab. Litig.</u>,

<u>Wendell v. Johnson & Johnson</u>, C 09-04124 CW, 2012 WL 3042302, at
*7 (N.D. Cal. July 25, 2012) ("A [drug] manufacturer . . .
discharges its duty to warn if it provides an adequate warning to
the physician about any known or reasonably knowable dangerous
side effects of a medicine, regardless of whether the warning
reaches the patient.  A plaintiff asserting causes of action for
failure to warn must prove not only that no warning was provided
or that the warning was inadequate, but also that the inadequacy
or absence of a warning caused the plaintiff's injury." (internal
citations omitted)); <u>Brown</u>, 44 Cal. 3d at 1062 ("The manufacturer
cannot be held liable if it has provided appropriate warnings and
the doctor fails in his duty to transmit these warnings to the
patient or if the patient relies on inaccurate information from
others regarding side effects of the drug."); <u>Stevens v. Parke,
Davis & Co.</u>, 9 Cal. 3d 51, 65 (1973) ("In the case of medical
prescriptions, '<u>if</u> adequate warning of potential dangers of a
drug has been given to doctors, there is no duty by the drug
manufacturer to insure that the warning reaches the doctor's
patient for whom the drug is prescribed." (quoting <u>Love v. Wolf</u>,
226 Cal. App. 2d 378, 395 (3d Dist. 1964) (emphasis added))).

Second, even if the learned intermediary doctrine were
to apply in this case to preclude finding any duty to warn

---

1:06-MD-1789 (JFK), 2008 WL 2940560, at *7 (S.D.N.Y. July 29,
2008)); <u>Martin</u>, 2005 WL 1984483, at *4 (E.D. Cal. Aug. 15, 2005)
(explaining that where the doctor was not warned, liability may
still extend to the manufacturer); <u>Maher v. Novartis
Pharmaceuticals Corp.</u>, 07CV852 WQH (JMA), 2007 WL 2330713, at *4
(S.D. Cal. Aug. 13, 2007) (learned intermediary doctrine did
prevent plaintiff from stating claim against drug distributor
because plaintiff alleged that distributor failed to properly
warn physicians, including plaintiff's physician).

plaintiffs on behalf of McKesson, it would likewise apply to preclude such a finding for the remaining manufacturer defendants.  Where "'a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit.'"  Hunter, 582 F.3d at 1044 (quoting Smallwood v. Ill. Cent. R. Co., 385 F.3d 568, 574 (5th Cir. 2004)).  In such instances, "'it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper.'"  Id. (quoting Smallwood, 385 F.3d at 574).  The learned intermediary doctrine does not provide a basis, therefore, to find that McKesson is a fraudulent defendant.  See Smallwood, 385 F.3d at 575 ("When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made.").

Defendants also note that under California law pharmacies cannot be subject to supplier liability for dispensing FDA-approved medicines in accordance with physician's prescriptions.  (Opp'n at 8 n.3 (citing Murphy v. E. R. Squibb & Sons, Inc., 40 Cal. 3d 672, 681 (1985)).)  They argue that "there is no basis under California law to distinguish pharmacies, who supply medicines to patients, from distributors, who supply medicines to pharmacies, in this context."  (Id.)  Whether that

11

1  is so, California courts have not yet extended the exception to
2  distributors.

3        Even though defendants note that plaintiffs have not
4  cited a single case in which a distributor of prescription
5  medicines was held liable for failure to warn under California
6  law, (Opp'n at 9:19-20), the foregoing analysis demonstrates that
7  California law does not foreclose such liability under either a
8  negligence or strict liability theory.  Accordingly, it is not
9  obvious that plaintiffs have no claim against McKesson under
10 California law.

11       B.    Preemption

12       Plaintiffs do not dispute that defendants' preemption
13 defense applies only to McKesson.  But they contend that the
14 Ninth Circuit has made clear that the court should not make a
15 fraudulent defendant determination based on a defendant's
16 possible defenses.  (Reply at 6:13-15 (citing Hunter, 582 F.3d at
17 1045) (Docket No. 19).)  It is not obvious, however, whether the
18 Ninth Circuit in Hunter meant that the defendants' preemption
19 defense would not overcome the strong presumption against removal
20 jurisdiction because it went to the merits of the plaintiff's
21 claim and because it applied to all the defendants, or merely
22 because it went to the merits.  See Hunter, 582 F.3d at 1043.
23 The court did explain that "[w]hen a defendant asserts that the
24 plaintiff's claim is impliedly preempted by federal law, it
25 cannot be said that the plaintiff's failure to state a claim
26 against the resident defendant is 'obvious according to the
27 settled rules of the state.'"  Id. at 1045 (quoting Hamilton
28 Materials, Inc., 494 F.3d at 1206).

1    Even if the court properly considers McKesson's

2    preemption defense on a motion to remand, defendants would not

3    meet their burden of showing that McKesson is a fraudulent

4    defendant.[5]  In <u>PLIVA v. Mensing</u>, 131 S. Ct. 2567 (2011), the

5    Supreme Court held that certain federal drug regulations preempt

6    state-law claims brought against generic drug manufacturers for

7    failure to warn about the dangers of the drugs they made.

8    <u>Mensing</u>, 131 S. Ct. at 2577-78.  This is because state law

9    imposes a duty on the generic drug manufacturers to change the

10   drugs' warning labels and federal law bars them from taking that

11   action.  <u>See</u> <u>id.</u> at 2581.  Consequently, a generic manufacturer

12   cannot simultaneously comply with both state and federal law.  In

13   contrast, in <u>Wyeth v. Levine</u>, 555 U.S. 555 (2009), the Supreme

14   Court held that a state-law failure-to-warn claim against a brand

15   drug manufacturer is not preempted by federal law.  <u>Wyeth</u>, 555

16   U.S. at 573.  Unlike a generic manufacturer, a brand manufacturer

17   may "unilaterally strengthen its warning."  <u>Id.</u>

18   Just days ago, in <u>Mutual Pharmaceutical Co., Inc. v.</u>

19   <u>Bartlett</u>, --- S.Ct. ----, 2013 WL 3155230 (U.S. June 24, 2013),

20   the Supreme Court held that, under <u>Mensing</u>, state-law design-

21   defect claims based on inadequate warnings against generic

22   manufacturers are also preempted by federal law.  <u>Bartlett</u>, 2013

23   WL 3155230, at *10.  The court noted that because the drug at

24

25       [5]     It is not quite accurate to call the defense
26   McKesson's, as McKesson has not yet appeared before this court,
     much less raised the defense.  A problem with applying
27   affirmative defenses in the fraudulent defendant analysis is that
     the court must consider the application of a defense to a
28   particular defendant who might--for a variety of reasons--not
     have wanted to raise it.

13

1   issue could not be redesigned (it would be a new drug), the only
2   way for the manufacturer to escape liability was to redesign the
3   drug's label, which it cannot do under federal law.  Id. at *9-
4   10.  It also rejected the argument that the manufacturer could
5   evade the impossibility of complying with both federal- and
6   state-law duties by not making a drug at all.  Id. at *10.

7        Defendants contend that under Mensing, "the doctrine of
8   implied preemption applies directly to bar claims against
9   manufacturers and distributors of generic drugs."  (Opp'n at
10  12:14-15.)  They argue that like the manufacturers of generic
11  drugs, the distributors of generic and branded drugs would
12  violate federal law by changing the label accompanying a drug.
13  (Id. at 13:3-7.)  In concluding their argument as to why Mensing
14  precludes failure-to-warn claims against the distributors of
15  brand-name drugs, defendants state: "In short, the reasoning of
16  Mensing applies with equal force to both distributors and generic
17  manufacturers, as both are equally powerless to change the
18  labeling of prescription drugs, without violating federal law."
19  (Id. at 16:18-20.)

20       The court recognizes the logic of defendants' argument,
21  but its articulation reveals an accompanying weakness.  Both
22  Mensing and Bartlett dealt with manufacturers of generic drugs,
23  not distributors.  To find plaintiffs' failure-to-warn claims
24  preempted, the court would have to extend Mensing and Bartlett;
25  that is, it would have to hold that the reasoning the Supreme
26  Court used in those cases to preempt state-law claims against
27  generic manufacturers compels the conclusion that state-law
28  claims against brand-name drug distributors are also preempted.

14

1    The parties do not identify any binding authority or authority

2    from California extending Mensing or Bartlett in that way.[6]   Thus,

3    while the argument that distributors of brand name drugs are the

4    same as generic manufacturers may be persuasive, "unless and

5    until this rationale is extended," it is not obvious that

6    plaintiffs have no claim against McKesson under California law

7    because of a preemption defense.   Taha, CV 13-02577-MWF (FFMx),

8    slip op. at 5 (internal quotation marks and citation omitted).

9         C.   Pleading Deficiencies

10         "[A] defendant seeking removal based on an alleged

11   fraudulent joinder must do more than show that the complaint at

12   the time of removal fails to state a claim against the

13   non-diverse defendant."   Padilla v. AT & T Corp., 697 F. Supp. 2d

14   1156, 1159 (C.D. Cal. 2009).   Such a "defendant must also show

15   that there is no possibility that the plaintiff could prevail on

16   any cause of action it brought against the non-diverse defendant.

17   Remand must be granted unless the defendant shows that the

18   plaintiff would not be afforded leave to amend his complaint to

19   cure [the] purported deficiency."   Id. (internal quotation marks

20   and citations omitted) (alteration in original).   To the extent

21   pleading standards are relevant to this analysis, courts have

22

23

24        [6]   Defendants cite only to In re Fosamax (Alendronate
25   Sodium) Products Liab. Litig. (No. II), MDL 2243 JAP-LHG, 2012 WL
     181411 (D.N.J. Jan. 17, 2012), a district court case from New
26   Jersey in which the court held on a motion to dismiss that
     because a brand-name distributor could not initiate a change in
     the drug's labeling, it could not "'independently do under
27   federal law what state law requires of it,'" and thus plaintiff's
     state-law claims that emanated from a failure-to-warn theory were
28   preempted.   In re Fosamax, 2012 WL 181411, at *1.

                                    15

1  looked to state law.[7]   In <u>Hunter</u>, the Ninth Circuit did not find

2  fraudulent joinder after determining that the plaintiff's

3  complaint sufficiently alleged a strict products liability claim

4  under Alaska state law.   <u>Hunter</u>, 582 F.3d at 1043 ("Construing

5  Hunter's pleadings liberally, as required by Alaska's notice

6  pleading rules, the complaint sufficiently alleges a strict

7  products liability claim under Alaska law.").   It explained that

8  "'if there is a possibility that a state court would find that

9  the complaint states a cause of action against any of the

10  resident defendants, the federal court must find that the joinder

11  was proper and remand the case to the state court.'"   <u>Id.</u>

12  (quoting <u>Tillman v. R.J. Reynolds Tobacco</u>, 340 F.3d 1277, 1279

13  (11th Cir. 2003)).

14        Defendants first contend that plaintiffs have not

15  alleged any fact from which it could be determined that McKesson

16  actually distributed the Effexor allegedly used by Hatherley

17  during her pregnancy.   (<u>See</u> Opp'n at 17:9-12.)   They cite several

18  cases finding fraudulent joinder where the plaintiff failed to

19  allege that the distributor sold or supplied the drug he or she

20  used.   In contrast, here plaintiffs allege based on information

21  and belief that defendant McKesson distributed the Effexor that

22  was dispensed to Hatherley.   (Compl. ¶ 9.)

23        Under California law, a "'[p]laintiff may allege on

24

25      [7]   Indeed, "[t]he test for fraudulent joinder is whether a
   reasonable basis exists for predicting that the plaintiff's
26  claims against the non-diverse defendant could succeed under
   state law.   It makes little sense to measure the state-law
27  viability of such claims, which were originally filed in state
   court, by federal pleading standards."   <u>In re Darvocet, Darvon &</u>
28  <u>Propoxyphene Products Liab. Litig.</u>, 889 F. Supp. 2d 931, 940
   (E.D. Ky. 2012) (internal quotation marks omitted).

information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true.'" Doe v. City of Los Angeles, 42 Cal. 4th 531, 550 (2007) (quoting Pridonoff v. Balokovich, 36 Cal. 2d 788, 792 (1951)).  "When a plaintiff lacks knowledge and the means of obtaining knowledge of facts material to his or her cause of action because the matters are peculiarly within the knowledge of the adverse party, and the pleader can learn of them only from statements of others, the pleader may plead what he or she believes to be true as a result of information (hearsay) the pleader has received." Dey v. Cont'l Cent. Credit, 170 Cal. App. 4th 721, 725 n.1 (4th Dist. 2008) (internal quotations and citations omitted).

Plaintiffs appear to base their allegation that McKesson distributed the Effexor Hatherley ingested on their knowledge that McKesson is the largest single distributor of Pfizer's pharmaceutical products, including those sold in California, and that fourteen percent of Pfizer's profits the year Hatherley was pregnant were sales to McKesson. (See Compl. ¶ 10.)  These facts are at least sufficient to provide plaintiffs with a belief that McKesson was the distributor of Hatherley's Effexor.  Moreover:

> Whether McKesson distributed the [Effexor] ingested by [Hatherley] is not a fact plaintiffs would have reason to know directly.  Information regarding the identity of the pharmacy or health care facility where [Hatherley] obtained the [Effexor] is within plaintiffs' knowledge.  However, whether McKesson distributed the drug to the pharmacy or health care facility is information plaintiffs would have to obtain from McKesson or a third party, i.e., the pharmacy or health care facility.  Thus, this is not information within plaintiffs' personal knowledge.

17

1  Mendez, 2012 WL 1911382, at *3.

2       Numerous other district courts have found similar, if

3  not identical, allegations sufficient to defeat a finding of

4  fraudulent joinder of a distributor defendant.  See Rivera v.

5  AstraZeneca Pharmaceuticals LP, CV 12-02921 GAF JEMX, 2012 WL

6  2031348, at *5 (C.D. Cal. June 5, 2012) (listing cases).  The

7  court agrees and finds that plaintiffs' allegation based upon

8  information and belief that McKesson distributed the Effexor

9  Hatherley ingested is sufficient to survive defendants'

10 opposition to remand based on fraudulent joinder.

11      Defendants argue more broadly that plaintiffs' claims

12 against McKesson are inadequate because they are targeted only at

13 "defendants" generally, rather than McKesson in particular.  (See

14 Opp'n at 20:9-23:12.)  Unlike in other cases finding such

15 allegations to counsel against remand, here "[p]laintiffs [did

16 not] fail to allege any 'particular or specific activity' on the

17 part of each of the non-diverse defendants."  Shah v. Wyeth

18 Pharmaceuticals, Inc., CV 04-8652 DT MANX, 2005 WL 6731641, at *3

19 (C.D. Cal. Jan. 18, 2005).  Plaintiffs alleged that McKesson in

20 particular distributed the Effexor Hatherley ingested.  (Compl. ¶

21 9.)  Other allegations are directed only at the Pfizer and Wyeth.

22      Further, under California law, "a pleading is adequate

23 so long as it apprises the defendant of the factual basis for the

24 plaintiff's claim."  Elder v. Pac. Bell Tel. Co., 205 Cal. App.

25 4th 841, 858 (1st Dist. 2012) (internal quotation marks and

26 citations omitted).  In other words, allegations are sufficient

27 to defeat a demurrer where "the complaint states facts sufficient

28

1  to constitute a cause of action." <u>Blank v. Kirwan</u>, 39 Cal. 3d

2  311, 318 (Cal. 1985); <u>see</u> Cal. Code Civ. P. § 425.10(a)(1)

3  (requiring complaint to contain "[a] statement of the facts

4  constituting the cause of action, in ordinary and concise

5  language").  The elements of a strict liability failure to warn

6  claim are:

> (1) the defendant manufactured, distributed, or sold the
> product; (2) the product had potential risks that were
> known or knowable at the time of manufacture or
> distribution, or sale; (3) that the potential risks
> presented a substantial danger to users of the product;
> (4) that ordinary consumers would not have recognized the
> potential risks; (5) that the defendant failed to
> adequately warn of the potential risks; (6) that the
> plaintiff was harmed while using the product in a
> reasonably foreseeable way; (7) and that the lack of
> sufficient warnings was a substantial factor in causing
> the plaintiff's harm.

14  <u>Rosa v. City of Seaside</u>, 675 F. Supp. 2d 1006, 1011 (N.D. Cal.

15  2009), <u>aff'd sub nom.</u> <u>Rosa v. Taser Int'l, Inc.</u>, 684 F.3d 941

16  (9th Cir. 2012), (quoting Jud. Council of Cal. Civ. Jury

17  Instruction No. 1205).

18      Defendants have not argued that plaintiffs failed to

19  allege any of these elements as to McKesson and a quick perusal

20  of the Complaint suggests that they have alleged each element.[8]

21  (<u>See</u> Compl. ¶¶ 9, 26, 37, 39, 70-73.)  Even if plaintiffs' strict

22  liability claim is technically deficient, defendants do not argue

---

[8]   Defendants contend that plaintiffs do not dispute
Pfizer's showing in its notice of removal that plaintiffs failed
to sufficiently allege any misrepresentation-based claim against
McKesson because plaintiffs have not satisfied the pleading
requirements of Federal Rule of Civil Procedure 9(b).  Although,
as the court noted above, federal pleading standards are not
relevant to the fraudulent joinder analysis--and the case
defendants cite fails to support their contention otherwise--
plaintiffs need to have stated only one viable claim against
McKesson to compel this court to remand.

1  that there is no possibility that plaintiffs would not be granted

2  leave to amend the Complaint.  <u>See</u> <u>Padilla</u>, 697 F. Supp. 2d at

3  1159.  Moreover, any ambiguities in the pleadings must be

4  resolved in favor of remand.  <u>Charlin v. Allstate Ins. Co.</u>, 19 F.

5  Supp. 2d 1137, 1140 (C.D. Cal. 1998) ("Doubt arising from

6  inartful, ambiguous, or technically defective pleadings should be

7  resolved in favor of remand.")  It is therefore not obvious that

8  plaintiffs did not state a claim against McKesson under

9  California law.  <u>See</u> <u>Hunter</u>, 582 F.3d at 1043.

10         With this conclusion and the foregoing analysis, the

11  court cannot find that McKesson is a fraudulently joined

12  defendant.  It remains a party and destroys complete diversity

13  between plaintiffs and defendants.  Accordingly, the court lacks

14  subject matter jurisdiction over this action.

15         IT IS THEREFORE ORDERED that plaintiffs' motion to

16  remand this case be, and the same hereby is, GRANTED.  This

17  matter is hereby REMANDED to the Superior Court of California, in

18  and for the County of Shasta.

19         IT IS FURTHER ORDERED that defendants' motion to stay

20  be, and the same hereby is, DENIED as MOOT.  Defendants' motion

21  to file a sur-reply be, and the same hereby is, DENIED.

22  DATED: July 3, 2013

23

24  _____

25  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

26

27

28